IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ENGLAND LOGISTICS, INC.,

      **Plaintiff,**

v.

CHAUNCY ARTMAN, et al.,

      **Defendants.**

Case No. 25-CV-01605-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of Defendants' Motion to Dismiss. (Doc. 13). Having been fully informed of the issues presented, the Motion is **DENIED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This action arises from a fatal motor vehicle accident on Interstate 57 in Mount Vernon, Illinois in which Sanford and Cynthia Artman were killed. (Doc. 1, ¶ 8). England Logistics ("England") is a federally licensed and registered Property Broker and Freight Forwarder. (Doc. 1, ¶ 14). Defendants are the Estates of Sanford and Cynthia Artman, as well as Sanford and Cynthia's children, Chauncy and Hannah C. Artman. (*Id.*, ¶¶ 25–26).

The following facts are drawn from England's Complaint for Declaratory Judgment, which the Court accepts as true for purposes of evaluating a motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). On June 28, 2023, England entered into a Broker/Carrier Agreement with Superior Internationale

Group, Inc. ("Superior Internationale"). (Doc. 1, ¶ 15). The Agreement identified England as a "Property Broker" and Superior Internationale as a "Motor Carrier" authorized to transport property under its own operating authority. (*Id.*, ¶¶ 16–18). Under the Agreement, Superior Internationale assumed sole responsibility for the management, control, and safe operation of its vehicles, drivers, and equipment, and warranted that its operations would comply with all applicable federal and state laws. (*Id.*, ¶¶ 19–20).

On or around January 15, 2025, England arranged for Superior Internationale to haul a shipment of dry foodstuffs from Shelbyville, Illinois, to New Brockston, Alabama. (*Id.*, ¶ 21). Superior Internationale agreed to transport the cargo in interstate commerce under its own motor carrier authority. (*Id.*, ¶¶ 22–23). England did not own the tractor, trailer, or any motor vehicle used by Superior Internationale, including the vehicle involved in the incident. (*Id.*, ¶ 24).

On January 16, 2025, Sanford and Cynthia Artman were traveling in their personal vehicle when they were involved in a collision with the tractor-trailer owned and operated by Superior Internationale. (*Id.*, ¶¶ 8–11). Both were fatally injured in the incident. (*Id.*, ¶ 8). As a result of the accident, counsel for Chauncy Artman sent England a preservation letter identifying that Chauncy was represented "with respect to claims for the wrongful death of his parents, Sanford Artman and Cynthia Artman." (*Id.*, ¶ 26). The letter demanded "preservation of certain evidence related to my client's injuries, the cause of those injuries, and evidence relating to the

Incident," and instructed England to "take all steps necessary to preserve anything that might be evidence with regard to this claim." (*Id.*, ¶¶ 27–28).

The letter listed eight categories of evidence to be preserved, including the vehicle and trailer, electronic data, maintenance records, driver logs and files, photographs and videos, all evidence obtained regarding the incident, and all records related to the cargo hauled at the time. (*Id.*, ¶ 29). It further asserted that the duty to preserve extended to all potentially relevant evidence, even if not specifically listed, and to evidence not on England's premises but within its control. (*Id.*, ¶¶ 30, 32). The letter warned that destruction of evidence could result in sanctions, adverse instructions, and other civil or criminal penalties. (*Id.*, ¶¶ 31, 33). It concluded by stating that it was "intended to put you on notice of the existence of claims against England Logistics." (*Id.*, ¶ 34).

England alleges that compliance with the letter has caused, and will continue to cause, financial detriment, including costs for document storage, employee time diverted from regular duties, and attorney's fees. (*Id.*, ¶¶ 40–41). England further asserts that it may be prohibited from updating computer systems because such updates could potentially eliminate data that Defendants claim must be preserved. (*Id.*, ¶ 42). Based on the express notice of claims and the resulting preservation obligations and costs, England contends that a "case of actual controversy" exists between the parties. (*Id.*, ¶ 43).

Accordingly, England filed the instant lawsuit with this Court on August 18, 2025, seeking a declaration that they owe no duty to preserve evidence as the Federal

Aviation Administration Authorization Act, 49 U.S.C. § 14501 *et seq.* ("FAAAA"), preempts all of Defendants' potential claims. (Doc. 1). On November 17, 2025, Defendants filed the instant Motion to Dismiss claiming the Court lacks jurisdiction and that England's Complaint failed to state a claim. (Doc. 13, pp. 1–2). England filed their Response on December 17, 2025, (Doc. 14), and Defendants filed their Reply on December 31, 2025. (Doc. 15).

**LEGAL STANDARD**

Defendants filed their Motion to Dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 13, 15). Both a Rule 12(b)(6) motion and a Rule 12(b)(1) motion share the same purpose: not to decide the merits of the case, but to test the sufficiency of the complaint. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012) (discussing Rule 12(b)(6)); *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (discussing Rule 12(b)(1)).

## I.    Rule 12(b)(1)

A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject matter jurisdiction. The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913 (7th Cir. 2009). In evaluating a motion brought under Rule 12(b)(1), the Court accepts as true the plaintiff's well-pleaded allegations and draws all reasonable inferences in favor of the nonmoving party. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The Court may "look beyond the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation modified) (quoting *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993)).

## II.    Rule 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the factual allegations] must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520

(7th Cir. 1990). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## ANALYSIS

England seeks a declaratory judgment that Defendants' potential state-law claims are preempted by the FAAAA. (Doc. 1). Defendants move to dismiss, arguing that the Court lacks subject-matter jurisdiction, should decline to exercise jurisdiction under the Declaratory Judgment Act, and that England fails to state a claim. (Doc. 13). The Court addresses each argument in turn.

## I.    Standing

The Court begins with Defendants' argument that England lacks standing to bring this suit.

> To establish standing under Article III, a plaintiff must demonstrate (1) an injury in fact—an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable judicial decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Fox v. Dakkota Integrated Sys.*, 980 F.3d 1146, 1151 (7th Cir. 2020) (stating the same). "Because standing is a constitutional requirement, a legislature cannot erase Article III's limits by statutorily granting the right to sue to a plaintiff who would otherwise lack standing," and, additionally, a "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement. *Fox*, 980 F.3d at 1151–52. Without

standing, a federal court lacks subject-matter jurisdiction and cannot reach the merits. *Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir. 1994).

"The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts, in their discretion, to render declaratory judgments only where there exists an 'actual controversy.'" *Trippe Mfg. Co. v. AM. Power. Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995). In determining whether an actual controversy exists, "the question in each case is whether the facts alleged, under all circumstances, show that there is a controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Id.*; *see also Maryland Cas. Co. v. Pacifici Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "The defendant must have engaged in conduct giving rise to a reasonable apprehension on Plaintiff's part that it will face an infringement suit or the threat of one if it commences or continues the activity in question." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). The focus of the inquiry must therefore rest on the Defendants' statements and conduct since an "apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." *Trippe Mfg. Co.*, 46 F.3d at 627. The determination is based on the facts existing at the time the complaint is filed. *Id.*

The question, therefore, is whether sufficient facts have been plead by the England to show that there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See GNB Battery Techs. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995). Specifically, the Court addresses whether the preservation letter sent

by Defendants to the England is sufficient to prove imminency and reality to warrant Article III standing. In making this determination, the Court must look only to the complaint and assess whether the possibility of suit under the FAAAA is sufficiently real and immediate. *Id.* This requires evaluating the complaint as a whole and considering the totality of the circumstances. *Id.* And even where a case presents an actual controversy, a court may properly decline to grant declaratory relief for prudential reasons. *Int'l Harvester*, 623 F.2d at 1217.

Defendants argues that a request for information is insufficient to create standing. (Doc. 13, p. 3). The Court disagrees. Defendants point to *Alcan Aluminum, Ltd. v. Department of Revenue*, where the Oregon Department of Revenue sought to audit Alcancorp to determine whether it was subject to a particular Oregon tax law. 724 F.2d 1294, 1296 (7th Cir. 1984). In that case, the Seventh Circuit held that a mere informational request, made to determine whether a statute applies, does not render a case ripe; ripeness arose only after the state assessed the tax. *Id.* at 1299. Thus, *Alcan* stands for the proposition that a bare request for information, unaccompanied by concrete injury, does not create federal jurisdiction.

However, the case at bar is materially different from *Alcan*. Defendants' preservation letter was not a narrow request for discrete information. Rather, it demanded that England produce all existing and potential information related to the claim, including materials identified in an extensive eight-point list and additional categories not specifically enumerated. (Doc. 1, Ex. B, pp. 1–2). It further directed England to take "all steps necessary to preserve anything that might be evidence with

regard to this claim." (*Id.*, Ex. B., p. 1). The letter therefore reaches for hypothetical data not yet known to either party and imposes an ongoing obligation to search for, identify, and preserve expansive categories of materials.

These obligations carry real costs. England alleges financial burdens in complying with the Defendants' letter including document-storage expenses, employee time diverted from regular duties, and attorney's fees. (Doc. 1, p. 8). While a narrowly tailored request for basic information might not constitute a concrete injury, the breadth and continuing nature of Defendants' demands create a sufficiently definite and non-speculative injury to satisfy Article III's injury-in-fact requirement.

The preservation letter also created a real and immediate threat of litigation. Courts have long held that threats conveyed through letters or other actions can satisfy the imminency requirement. In *Norfolk Southern Railway Company v. Guthrie*, the Seventh Circuit found imminency where the defendant hired counsel experienced in similar litigation and sent letters alleging potential violations of federal law. 233 F.3d 532, 535 (7th Cir. 2000). Here, Defendants retained the Bruning Law Firm, which represents similarly situated claimants. (Doc. 1, Ex. B; Doc. 14, pp. 7–8). The preservation letter expressly stated that it was "intended to put you on notice of the existence of claims against England Logistics, and to alert you so that you do not allow evidence to be destroyed." (Doc. 1, Ex. B). That language, combined with the retention of counsel and the nature of the allegations, made it reasonable for England to conclude that litigation was imminent at the time of filing. The Court

also takes judicial notice that Defendants subsequently filed suit in state court, confirming that England's apprehension was objectively reasonable.[1] (Doc. 15, pp. 1–2).

Accordingly, the Court concludes that England has adequately alleged an injury in fact, causation, and a real and immediate threat of litigation sufficient to establish Article III standing.

## II.    Amount in Controversy

Defendants also challenge England's ability to satisfy the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 13, p. 4 n.1). They argue that England already has a statutory duty under the FAAAA to retain certain broker records for three years and therefore cannot show that compliance with the preservation request will exceed $75,000.00 (*Id.*). England responds that it reasonably anticipated that Defendants would assert wrongful-death claims arising from the deaths of Sanford and Cynthia Artman, and that such claims exceed the jurisdictional threshold. (Doc. 14, p. 11). England further contends that the anticipated costs of preserving evidence and defending against such claims will surpass $75,000.00, and that the FAAAA's general record-retention requirements do not encompass the broad preservation demands contained in Defendants' letter. (*Id.*).

In a declaratory-judgment action, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n,*

---

[1] The Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment; this includes taking judicial notice of state court decisions. *General Elec. Capital Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008).

432 U.S. 333, 347 (1977). The Seventh Circuit applies the "either-viewpoint" rule, under which the object of the litigation may be valued from either "what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003). But in either case, the value must be reasonably determinable and not based on conjecture. *Id.*; *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268–70 (11th Cir. 2000).

Here, the Court measures the value of the litigation from England's perspective—namely, the benefit it seeks to obtain through a declaratory judgment. The true object of this action is not the cost of preserving records. Rather, England seeks a declaration that the FAAAA preempts state-law tort claims arising from the fatal accident. (Doc. 1, pp 8–14). England reasonably anticipated that Defendants would assert wrongful-death claims, and Defendants in fact did so. (Doc. 15, pp. 1–2). The value of avoiding exposure to such claims easily exceeds $75,000.00. *See Midland Mgmt. Co. v. Am. Alt. Ins. Corp.*, 132 F. Supp. 3d 1014, 1019–21 (N.D. Ill. 2015) (amount in controversy satisfied where underlying negligence claims exposed plaintiff to significant damages); *Kovach v. Nationwide Gen. Ins. Co.*, 2019 WL 5839267, at *2–3 (N.D. Ill. Nov. 7, 2019) (potential exposure for bodily-injury claims exceeding $75,000.00 satisfied jurisdictional requirement).

Accordingly, under the "either-viewpoint" rule and from England's perspective, the value of the object of this litigation satisfies the amount-in-controversy requirement.

### III.   *Wilton/Brillhart* **Discretion**

Defendants next seek dismissal under Rule 12(b)(6), arguing that the Court should decline to exercise jurisdiction under the Declaratory Judgment Act because England's action would not fully resolve the parties' dispute and would instead encourage piecemeal litigation. (Doc. 13, pp. 5–6). Under the *Wilton/Brillhart* abstention doctrine, federal courts have discretion to decline jurisdiction over a declaratory-judgment action when doing so would interfere with parallel state proceedings or would not serve the purposes of the Declaratory Judgment Act. *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). Defendants contends that although the FAAAA preempts negligent-selection claims, it does not preempt agency or vicarious-liability theories under *Montgomery v. Caribe Transport II, LLC*, 124 F.4th 1053 (7th Cir. 2025). (Doc. 13, pp. 5–6). Because agency liability turns on a fact-intensive control analysis, Defendants argue that England's preemption theory cannot dispose of all potential claims and is better addressed in the context of an actual tort action. (*Id.*, p. 6).

England responds that its Complaint plausibly alleges an actual justiciable controversy and satisfies Rule 12(b)(6). (Doc. 14, p. 12). It argues that declaratory relief will clarify the parties' legal obligations and serve the core purpose of the Declaratory Judgment Act by resolving the dispute early and efficiently. (*Id.*, p. 13). England further asserts that abstention is the exception, not the rule, and notes that several state courts have recognized broad FAAAA preemption extending to vicarious-liability claims. (*Id.*, pp. 14–15). England therefore maintains that its

declaratory action will fully resolve the controversy and that dismissal would be
improper. (*Id.*).

District courts possess substantial discretion to dismiss or stay claims seeking
declaratory relief, even when subject-matter jurisdiction exists. *Envision Healthcare*,
604 F.3d at 986; *R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 714 (7th
Cir. 2009). As the Supreme Court explained, the Declaratory Judgment Act "created
an opportunity, rather than a duty, to grant a new form of relief to qualifying
litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). This discretion arises
from the statute's text, which provides that a court "may declare the rights and other
legal relations of any interested party." 28 U.S.C. § 2201(a). Thus, unlike judicially
created abstention doctrines, *Wilton/Brillhart* discretion is rooted in the statute itself.
*Med. Assur. Co. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010).

The doctrine is most commonly invoked when parallel state proceedings are
pending. *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). Parallel
proceedings raise concerns of comity, federalism, efficiency, and fairness. *Brillhart v.
Excess Ins. Co.*, 316 U.S. 491, 495 (1942). Still, "the mere pendency of another suit is
not enough in itself to refuse a declaration." *Sears, Roebuck & Co. v. Zurich Ins. Co.*,
422 F.2d 587, 590 (7th Cir. 1970). The Seventh Circuit instructs courts to consider
several factors, including: (1) whether the declaratory action presents a question
distinct from issues in the state proceeding; (2) whether the parties are identical; (3)
whether the declaratory action will clarify the legal obligations and relationships
among the parties or merely create duplicative, piecemeal litigation; and (4) whether

comparable relief is available in another forum or at another time. *Zavalis*, 52 F.3d at 692.

Beginning with the first two factors, Defendants represent that a state-court action has been filed, but they have not provided the operative complaint, identified the claims asserted, or shown that the parties and issues mirror those presented here. (Doc. 15, p. 1). Without evidence that the state proceeding involves identical parties and substantially similar legal questions, the Court cannot conclude that the actions are parallel. Mere notice of a separate filing does not establish that proceeding with this action would result in piecemeal litigation or interfere with the orderly disposition of a state case. *Zurich Ins. Co.*, 422 F.2d at 590. These factors therefore weigh in favor of exercising jurisdiction.

The third factor, whether a declaratory judgment would clarify the parties' legal obligations, also favors jurisdiction. Defendants argue that the Seventh Circuit has not held that the FAAAA preempts all state tort claims. But that contention presents a question of law, not fact. *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir. 2000). Whether the FAAAA preempts state-law causes of action turns on statutory interpretation and circuit precedent, not on disputed facts concerning the accident, agency relationships, or damages. The risk of piecemeal litigation arises when parallel proceedings require separate tribunals to resolve overlapping factual issues. *Hellman*, 610 F.3d at 379. That concern is absent here. This declaratory action seeks a threshold determination of federal preemption that will define the permissible scope of any future litigation. Resolving that legal question

now will clarify the parties' obligations without intruding upon factual determinations in another forum.

The final factor also weighs in favor of exercising jurisdiction because comparable relief is not meaningfully available elsewhere. Although England could raise FAAAA preemption as a defense in a future or pending state action, that does not provide the same practical or procedural relief sought here. The Declaratory Judgment Act exists to allow early resolution of legal disputes and to avoid prolonged uncertainty. *Zurich Ins. Co.*, 422 F.2d at 589; FED. R. CIV. P. 57. Dismissing this action would force England to await a state-court proceeding to litigate the same federal question presented here, undermining the Act's purpose. *Hellman*, 610 F.3d at 377.

For these reasons, the Court declines to abstain from exercising jurisdiction under the Declaratory Judgment Act.

## IV.    Stare Decisis

Finally, Defendants move to dismiss for failure to state a claim, arguing that *Ye v. GlobalTranz Enters.*, 74 F.4th 452 (7th Cir. 2023) was wrongly decided with respect to negligent hiring. (Doc. 13, pp. 6–7). However, as both parties have correctly pointed out, this Court is bound by the principal of stare decisis. In our hierarchical system, "the decisions of a superior court in a unitary system bind the inferior courts." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987). This fundamental principle of vertical stare decisis requires a district court in the Seventh Circuit to "follow the decisions of [the Seventh Circuit] whether or not they agree." *United*

*States v. Uriarte*, 748 F. Supp. 3d 602, 608 (N.D. Ill 2024); citing *Reiser v. Res. Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Due to *Ye's* binding effect upon this Court, Defendants' argument is rejected.

### CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss (Doc. 13) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 26, 2026**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
